**859-15**

PD-0859-15

COURT OF CRIMINAL APPEALS OF TEXAS

ORIGINAL

TEX. R. APP. P. 68.4

BADEAUX AlPHA JAMES
PETITIONER

v.

THE STATE OF TEXAS

RECEIVED IN
COURT OF CRIMINAL APPEALS
SEP 16 2015
Abel Acosta, Clerk

FILED IN
COURT OF CRIMINAL APPEALS
SEP 18 2015
Abel Acosta, Clerk

PETITION FOR DISCRETIONARY REVIEW
THE NINTH COURT OF APPEALS
No. 05-02-01788-CR
THE CONVICTION No. 0859-15-CR From
the 359th Judicial District Court
Montgomery County, Tx

PETITIONER PETITION FOR DISCRETIONARY
REVIEW

BADEAUX AlPHA JAMES
HUNTSVILLE UNIT 1336251
815 12th STREET
HUNTSVILLE, TX 77348

## NAMES OF ALL PARTIES
### TEX. R. APP. V. 38. 11(A)

Petitioner: _____ → Badeau 2 James
Huntsville Unit
Petitioner's trial Counsel _____ → 815 12th Street
Huntsville, TX 7734?

Petitioner Counsel on Appeal → (same)

Trial Judge: _____ → Kathleen
Hamilton

District Attorney _____ → D. Craig
Hughes

Counsel for State _____ → Jason
Larman

(2)

# Table of Contents
## Tex. R. App. P. 68.4(A)

Statement of Case Style and Case Number _____

Name of All Parties _____

Index of Authorities _____

Statement Regarding Oral Arguments _____

Statement of the Case _____

Statement of Procedural History _____

Reason For Granting Review T.R.A.P(6Lu3) _____

Ground For Review 1. _____

Ground For Review 2. _____

Ground For Review 3. _____

Ground For Review 4. _____

Ground For Review 5. _____

Ground For Review 6. _____

Ground For Review 7. _____

Ground For Review 8. _____

Ground For Review 9. _____

Ground For Review 10. _____

Ground For Review 11. _____

Ground For Review 12. _____

Ground For Review 13. _____

Ground For Review 14. _____

Ground For Review 15. _____

Ground For Review 16. _____

Argument _____

Prayer For Relief _____

Cert. Apage of Service _____

Appendices _____

(3)

# Index of Authorities
## Tex. R. App. V. 68. 4(b)

Cases:

Anderson v. State 182 S.W.3d. 914
Baxstrom v. Herold 383 U.S. 107. 86 S.Ct. 760.
Blockburger v. U.S. 284 U.S. 299
Brown v. Beto 377 F2d 950
Brady v. Maryland 377. 724 F2d. At 399
Ex Parte Culver 932 S.W. 2d. 207
Cuthrell v. Director 475 F2d 1364
Davie v. State 381 S.Ct. 601. 609
Donald v. State 198 Ariz 406
Emmit v. Y.D.C. 770 F2 529
Fitzpatrick v. Robinson 2013
Ford v. State 243 S.W.3d. 112
Garret v. Estelle 424 F. Supp. 468
Hampton v. State 66 S.W. 3d. 430
Ex Parte Hight 2008 WL 366770
Honeycutt v. State 82 S.W. 3d. 545
Ex Parte Koleman 599 S.W. 2d. 307
Lynce v. Mathis 519 U.S. 411 - 433
Ex Parte Morales 212 S.W. 3d. 483
Rabb v. State 681 S.W. 2d. 152
Roser v. State 479 S.W. 2d. 42
Ex Parte Sanders 388 S.W. 2d. 40.
State v. Donald 198 Ariz 406, 10 P.3d
Ex Parte Stuart 653 S.W. 2d. 13
U.S. v. Kessler 335 Fed. App. 403
U.S. v. Padilla 2013
U.S. v. Rivera 384 F.3d. 49
Washington v. Glickberg 521 U.S. 702
Washington v. Smith 219 F.3d. 620
Whitten v. State 587 S.W. 2d. 156

Statutes:
Tex. Code. Crim. Proc. Ann. Art.
182 S.W. 3d. 914 (Tex. Crim. App. 2006)
383 U.S. 107. 86 S.Ct. 760. 15 L. Ed. 2d. 620
284. U.S. 299. (1932)
377. F. 2d 950 (2007)
377. 724 F. 2d. At 399
932 S.W. 2d. 209 (1996)
475 F. 2d 1364. 1366 (1973)
381 S. Ct. 1001. 609. 643 (2009)
198 ARI 406. 10 P. 3d. 1193
770 F. 2d. 529
143 S.W. 3d. 112
424 F. Supp. 468
66 S.W. 3d. 430
2008 WL 366770
82 S.W. 3d. 545
599 S.W. 2d. 309 (1986)
519 U.S. 411 - 433 (1997)
212 S.W. 3d. 483. 493
681 S.W. 2d. 152
479 S.W. 2d. 42 (1972)
588 S.W. 2d. 40. (1994)
198 AR.I 406. 10 P. 3d
653 S.W. 2d. (3 (1983)
335 Fed. App. 403
384 F. 3d. 49
521 U.S. 702
219 F. 3d. 620
587 S.W. 2d. 156 TX. Crim. App. (1979)

(5)

CRIMINAL LAW KEY 273.1(4)

VERNON'S ANN TEXAS C.C.P. Art, 26.13 (A)(B) 62.62.62.03
VERNON'S ANN TEXAS C.C.P. Art. 26.13
VERNON'S ANN TEXAS C.C.P. Art. 26.13(A)(2004)
VERNON'S ANN TEXAS C.C.P. Art. 26.13(d)(2004)
VERNON'S ANN TEXAS C.C.P. Art. 62.051 And 11.07(3)(C)

CRIMINAL LAW KEY 1163(1)

VERNON'S ANN TEXAS C.C.P. Art. 62.051. 11.07 (3)(C).

Constitutions: TEXAS. Const. Art. 5.6.14

VERNON'S ANN. U.S.C.A. Const. Amend 5
KEY 5.1       U.S.C.A. Const. Amend 5
KEY 134.161 U.S.C.A. Const. Amend 5
KEY 135       U.S.C.A. Const. Amend 5
KEY 265.5 U.S.C.A. Const. Amend 5
KEY 265.5 U.S.C.A. Const. Amend 14
KEY 23       U.S.C.A. Const. Amend 5
KEY 134,135 U.S.C.A. Const. Amend 5

(6)

## Statement Regarding Oral Argument
### Tex. R. App. P. 68.4 (C)

The Petitioner is not able to prove his case and waives any oral arguments under Tex. R. App. P. 68.4(C). Petitioner request for an appointment of an attorney to assist him with any oral or written arguments.

## Statement of the Case
### Tex. R. App. P. 68.4(d)

Petitioner was charged with indecency with a child sexual contact (Count One) Aggravated sexual assault of a child (Count two) and Burglary of a habitation (Count three) 15 years count (1). (50) years count (2), (15) years count (3). Years in the Texas Department of Criminal Justice. Appealed on October 26, 2005.

## Statement of Procedural History
### Tex. R. App. P. 68.4(E)

Petitioner perfected his appeal on July 15, 2015 Petitioner was not appointed a counsel. Petitioner is filing pro-se P.D.R. Petition for Discretionary Review along with Memorandum Opinion that on April 28, 2015 the Memorandum was sent to the Petitioner.

(7)

# Court of Criminal Appeals of Texas
## Tex. R. App. P. 66.3

Petitioner Request the Court of Criminal Appeals Power of Supervision in Accordance with Tex. Rules App. Proc. 66.3 Specifically Asking:

(1). 66.3 (A)  To decide Extrapoliation Testimony Considered.

(2) 66.3 (d)  Whether the Court of Appeals misconstrued Tex. Code. Crim. Proc. Ann. Art. 46 (B).004 (6)(c) when Competency is in Question by the Trial Judge.

(3). 66.3 (b)(f)  Whether the Court of Appeals has Sanctioned the lower Court to so far depart from the Accepted And unusual Course of Judicial Proceedings.

(8)

# GROUNDS FOR REVIEW

(1) "Collateral Attack"
(2) "Collateral Consequence"
(3) Enhancement
(4) False Imprisonment
(5) Burden of Proof
(6) Due Process
(7) Denial of Counsel
(8) Double Jeopardy
(9) Exculpatory Evidence
(10) Plea Offer
(11) Unprofessional Errors
(12) Plea Bargaining
(13) Guilty Plea
(14) Offer In Writing
(15) Admonishment
(16) Ineffective Assistance of Counsel

(9)

# ARGUMENT
## Tex. R. App. 68.4(2)
## Ground No. 1

When it is shown that no evidence exit to support the conviction (or) sentence relief will be granted on collateral attack. Ex Parte Mcffeh 542 S.W. 2d. 184 (1976). When a court has no evidence upon which to based a conviction a violation of due process has accurred and the conviction may be attacked collaterally in any proceeding. Ex parte Koleman 599 S.W. 2d. 307, Kimmdman v. Morrison 477 U.S. 365, 377 (1986), Facts Ex parte Pool 738 S.W. 2d. 285, 286 Tex. Crim. App. (1987) Ex Parte Briggs 187 S.W. 3d. 458-467, 468 (2005), Zepeda V. State 278 S.W. 2d. 158, 161. Richandson 397 U.S. 159. 779 90 S.Ct. 1441, 1449 2d. 763 (1970).

(10)

PETITIONER WAS DEFENDANT WHO CLAIMED THAT HIS BEING IMPRISONED FOR MORE THAN (10) YEARS FOR MORE CONVICTION OFFENSES BREACHED TERMS OF PLEA AGREEMENT WAS NOT ENTITLED TO WRIT OF CORAM NOBIS ABSENT SHOWING OF THE CONVICTION AND COMPLETE MISCARRIAGE OF JUSTICE, 28 U.S.C.A. 68 1651 (A) U.S. V. KESSLER 335 FED. APP.

IF THE CONSEQUENCES OF A GUILTY PLEA IS DEFINITE AND LARGELY (OR) COMPLETELY AUTOMATIC, THEN IT IS A DIRECT CONSEQUENCE, THERE CAN BE NO QUESTION THAT THE ADMONISHMENT WAS NOT PROPER. Article 26.13 V.A.C.C.P. REQUIRES THAT A DEFENDANT BE ADMONISHED AS TO THE RANGE OF PUNISHMENT WHEN PLEA GUILTY (OR) NOLO CONTENDERE ALL THAT IS REQUINED IS SUBSTANTIAL COMPLIANCE, WHITTEN V. STATE 587 S.W. 2d. 156 TEX. CRIM. APP. (1979) &

(11)

## ARGUMENT
## TEX. R. APP. 68.4(g)
## GROUND NO. 3

THE law on Limitation on Writ Relief After A plea of guilty the ground for Habeas Corpus Relief After A Plea of guilty Are Very limited, the general Rule, is that A Plea of guilty was waived All Non-Jurisdiction defects. BROWN V. BETO, 377 F2d. 950 5th Cir (1967). This MEANS that if your plea is Voluntary You CAN Attack Only the Jurisdiction ion power of the Court to bring you to trial. For Example You would be Able to Challenge an Indictment if it did not Charge an Offense under the State Law (or) if You were tried for A felony wind the Act You Committed was Only A Misdemeanor. COUNSEL failure to INVESTIGATE the Circumstances of Convictions Used to ENHANCE SENTENCE, A failure to Challenge prior Conviction Used for Enhancement Are Cognizable. When the Court of Criminal Appeals finds that A Void prior Conviction was Used to Enhance the sen- -tence it will Remand for Resentenceing Back to Court. Ex Parte Scott 581 s.w. 2d. 181 Ex Parte Stuart 653 s. w. 2d. 131 (1983) Ex Parte Barfield 697 s. w. 420 - 421 Tex Crim App. (1985). Ex Parte Sewell 742 s. w 2d. 393 Tx. Crim App. (1987) Galloway v. state 578 s.w. 2d. 147 Tex. Crim. App. panel (1979).

(12)

## Argument
## TEX. R. APP. 68.4(9)
## GROUND NO. 4

An Applicant is entitled to relief if he was denied the right to counsel at any critical stage of the proceedings. Ex Parte Sanders 588 S.W. 2d. 383 (1979).

## Argument
## TEX. R. APP. 68.4(9)
## GROUND NO. 5

All person are presumed to be INNOCENT and no person may be convicted of an offense unless each element of the offense is proved beyond a reasonable doubt. Sec. 2.01 Act (1973), 63rd Leg. Pa. 883. Ch. 399. Sec. 1 Eff. Jan. 1, 1974 Amended.

## Argument
## TEX. R. APP. 68.4(9)
## GROUND NO. 6

Our Nations History Legal Traditions And Practices thus Provide the Critical Guide Post Responsible for Decision making that Direct And Restrain Our Exposition of Due-Process. Washington V. Glucksberg 521 U.S. 702, 711, 117 S.ct. 2258. Ex Parte Morales 212 S.W. 3d. 483, 493.

(13)

## ARGUMENT
## TEX. R. APA 68.4(9)
## GROUND NO. 7

Gideon v. Wainwright, 372 u.s. 335, 342 (1963) 6th Amendment Right to Counsel in Criminal Proceedings Applies to State through 14th Amendment; Johnson v. Zerbst, 304 u.s. 458, 463 (1938) 6th Amendment Right to Counsel at Criminal Proceedings without withholds from federal courts the Power and Authority to deprive an accused of his life or liberty unless he has or waives the Assistance of Counsel.

## ARGUMENT
## TEX. R. APP. 68.4(9)
## GROUND NO. 8

Multiplicity Indictments charging A single offense in different Counts are Multiplictous. Such Indictments are improper because they may prejudice the defendant (or) result in multiple sentences for a single offense in violation of the Double Jeopardy Clause. If the indictment charges Multiple violation, however, the defendant can be made to answer for each violation separately. Multiplicity does not Ext. if each Count of the indictment requires proof of facts that the other Counts do not require. When Multiplicity becomes apparent before trial, the Court may order government to choose the Count on which it will Continue and dismiss the remaining Counts.
37 Geo. L. J. Ann. Rev. Crim. Proc. (2008)
Pg. 283.

(14)

## ARGUMENT
## TEX. R. APP. 68.4(9)
## Ground No. 9

Evidence withheld requires the prosecution to disclose any and all evidence, that might be material to guilt whether (or) not it is Exculpatory. And do concluded that when respondents counsel omitted this discovery claim on a lesser charge, it then affected the Judgment of the Jury, on Rule 602.1 Doing Rule 801. 405 U.S. At 154, 92 S.Ct. At of Church V. State 23 S.W.3d. 536 - 538 Tex. App. Dist 2000. Brady V. Maryland 373, 724 F.2d. At 399. Pena V. State 126 S.W.3d. 634 Tex. App. Waco (2007)

## ARGUMENT
## TEX. R. APP. 68.4(9)
## GROUND No. 10

In Frye, the Supreme Court held that a defense counsel failure to communicate a formal plea offer to a defendant constitutes ineffective assistance of counsel. The American Bar Association recommends defense counsel promptly communicate and explain to the defendant all plea offers. Made by prosecuting Attorney. Davie V. State 381 S.Ct. 601. 675 S.E 2d. 416 - 420 (2009).

(15)

## ARGUMENT
## TEX. R. APP. P. 38. 4.(9)
### GROUND NO. 11

A defendant must show that there is reason-
able probability that, but for counsel's error
unprofessional error, the proceeding would
have been different. All we had to do is look
at the indictment, I would not have so much time.
U.S. V. Padilla 2013.

## ARGUMENT
## TEX. R. APP. P. 38. 4(9)
### GROUND NO. 12

A defendant has a Sixth Amendment Right to
effective assistance of counsel in the plea-
bargaining process Burns V. U.S. 2013. The
United States Supreme Court has recognized
that the plea bargaining stage is a critical
one at which defendants are constitutionally
entitled to effective counsel. Wilson V. Chavez
2012.

## ARGUMENT
## TEX. R. APP. P. 38. 4(9)
### GROUND NO. 13

In the guilty plea context, A petitioner must
show that there is a reasonable probability,
that, but for counsel's errors, he would not
have pleaded guilty and would have insisted
not to go to trial. My lawyer told me that
he could beat the case don't worry any.
Fitzpatrick V. Robinson 2013.

(16)

## ARGUMENT
## TEX. R. APP. 68.4(9)
## GROUND NO. 14

THE Prosecution And the trial Courts may Adopt some measures to help ensure Against late, frivolous, or fabricated Claim 1409, when A later less AdVantageous Plea Offer has been Accepted (or) After a trial leading to Conviction with resulting harsh ConseQuences. First, the fact of a formal Offer means that its terms and its Processing can be documented so that what took Place in the Negotiation Process becomes more clear if some later dispute turns On the Conduct of Earlier detrial Negotiations. Seconds; states may Elect to follow Rules that All Offers must be in writing. Again to ensure Against late mis-understandings. (or) fabricated Charges, N.J. ct. Rule 3.9-11(b)(2012) State V. Donald 198 Ariz 406, 10 P.3d 1193.

(17)

ARGUMENT
TEX. R. APP. 68. 4(9)
Ground No. 15

T.C.C.P. Article 62.051. And Also 11.07 (3)(c)
BADEAUX guilty PLEA WAS NOT Voluntary,
INTELLIGENTLY, (OR) KNOWINGLY ENTERED, And
his PLEA, When he advised BADEAUX to PLEA
guilty, SEX REGISTRATION. September 1, 1970 All (50)
STATES. APPELLANT is Challenging the Judgment
of the trial Court, which Accepted his guilty
PLEA to the AdmONishment. 493 S.W.2d. 174
Rogers V. State 479 S.W. 2d. 42 (1972).
Crocker V. State, 485 S.W. 2d. 566 Tr.Cram.App.
(1972) Jefferson V. State 486 S.W 2d. 782 (1972).
REGISTRATION REQUIREMENT FOR A PERSON Who
is Convicted of SEX-OFFENSE is A direct
CONSEQUENCE of the PERSON's guilty PLEA,
And thus A trial Court is required to Admonish
the PERSON About REGISTRATION REQuirement
VERNON's Ann. TEXAS. C.C.P. Art. 26.13 (A) (5)
62.02, 62.03. Criminal Law KEY 273.1 (4).

(18)

## ARGUMENT
## TEX. R. APP. 68. 4(9)
## GROUND NO. 15 (A)

HE WAS ARRAIGNED ON October 13, 2005, AND PLEADED guilty to the indictment Article 26.13 of the Code of Criminal PROCEDURE REQUIRES. "PRIOR to ACCEPTING A PLEA of guilty or A PLEA of Nolo Contendere, the Court shall Admonish the Defendant of Four things:

(1) THE RANGE of Punishment Attached to the OFFENSE.

(2) CERTAIN Aspects of the law of A Plea bargain AGREEMENTS.

(3) THE EFFECT that A PLEA bargain Agreement may have on the Right of Appeal. And.

(4) THE EFFECT that A Conviction might have ON A NON-CITIZEN. (1) THE Article contains A fifth Admonition for a defendant who is Accused of AN OFFENSE that May Require Him to Register.

## ARGUMENT
## TEX. R. APP. 68. 4(9)
## GROUND No. 16

THE One Performance Prong Requires for A Defendant to Show that the Counsel Represention Fell below AN OBJECTIVE standard of the REASONABLENESS:

(1) COUNSEL HE Knew the indictment was Void, (3) Charges on the same indictment, (ground 2) MOTION to Quash Indictment.

(2) COUNSEL ALSO Knew the Charges of 100 Charges were distinct Crimes of the Same Double Jeopardy.

(19)

## PRAYER FOR RELIEF
### Tex. R. App. P. 68.4 (i)

PETITIONER PRAYS that this Court GRANT his Petition FOR DISCRETIONARY REVIEW. And following the GRANT of REVIEW, Petitioner PRAYS that the JUDGEMENT of the COURT OF APPEALS BE REVERSED AND the CASE REMANDED to the trial Court FOR A NEW trial. OR ANY Other APPROPRIATE RELIEF.

(20)

## Certificate of Service
Tex. R. App. V. 28.11

Petitioner was unable to Obtain Copies
to Supplement State Prosecutions Version

## Declaration

I Badeaux Alpha James, am the Petitioner. And
being Presently Incarcerted At the Huntsville
Unit 815 12th Street Huntsville, Tx 77348

Signed On Oct September 11,
2015!

_____
SIGNATURE

21

In The

*Court of Appeals*

*Ninth District of Texas at Beaumont*

---

NO. 09-15-00175-CR
NO. 09-15-00176-CR
NO. 09-15-00177-CR

---

**ALPHA JAMES BADEAUX, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 359th District Court
Montgomery County, Texas
Trial Cause No. 05-02-01288 CR (Counts 1, 2 and 3)**

---

**MEMORANDUM OPINION**

On April 28, 2015, Alpha James Badeaux filed notices of appeal concerning his convictions for indecency with a child by contact, aggravated sexual assault on a child and burglary of a habitation in trial court case number 05-02-01288 CR. We notified the parties that the notices of appeal had not been filed within the time required for perfecting appeals. Badeaux filed a motion for an extension of time to file his notices of appeal.

1

(22)

The trial court sentenced Badeaux on October 26, 2005. The convictions were affirmed on appeal and the Texas Court of Criminal Appeals refused Badeaux's petition for discretionary review. *See generally Badeaux v. State*, No. 09-05-489-CR, 2007 WL 1052439, at *1 (Tex. App.—Beaumont Apr. 4, 2007, pet. ref'd) (mem. op.) (not designated for publication). A federal court subsequently denied with prejudice Badeaux's petition for writ of habeas corpus. *See generally Badeaux v. Thaler*, No. H-09-4127, 2011 WL 863617 (S.D. Tex. Mar. 9, 2011) (mem. op.) (not designated for publication). The notices of appeal at issue here were filed after Badeaux's convictions were final and not subject to direct appeal. We deny the appellant's motion for extension of time to file notice of appeal and we dismiss the appeals for lack of jurisdiction.

APPEALS DISMISSED.

_____
STEVE McKEITHEN
Chief Justice

Submitted on June 23, 2015
Opinion Delivered June 24, 2015
Do Not Publish

Before McKeithen, C.J., Horton and Johnson, JJ.

2 *(23)*

STATE OF TEXAS

v.

Alpha James Badeaux

<u>359th</u> District Court

NO. <u>05-02-01288</u> -CR

2005 FEB 18 PM 12:28

DEPUTY

# INDICTMENT

| Count | Charge | DA File # | Agency # |
|-------|--------|-----------|----------|
| #1 | INDECENCY W/CHILD SEXUAL CONTACT Sec. 21.11(a)(1); Fel. 2 ° | 04-003956.1 | 04A025361 |
| #2 | AGG SEXUAL ASSAULT CHILD Sec. 22.021(a)(1)(B); Fel. 1 ° | 05-000317 | 04A025361 |
| #3 | BURGLARY OF HABITATION Sec. 30.02(d); Fel. 2 ° | 05-000318 | 04A025361 |

## IN THE NAME AND BY AUTHORITY OF THE STATE OF TEXAS:

THE GRAND JURY, for the County of Montgomery, State of Texas, duly selected, empaneled, sworn, charged, and organized as such by the 359th Judicial District Court for said County, upon their oaths present in and to said court that **Alpha James Badeaux**, hereinafter styled Defendant, on or about **June 15, 2004**, and before the presentment of this indictment, in the County and State aforesaid, did then and there, with intent to arouse and gratify the sexual desire of the Defendant, engage in sexual contact by touching the genitals of Arialle Dempsey, a child younger than 17 years of age and not the spouse of the Defendant,

### COUNT NO. 2

And the GRAND JURY further presents in and to said Court that on or about **June 15, 2004** in Montgomery County, Texas, **Alpha James Badeaux**, hereinafter styled Defendant, did then and there intentionally and knowingly cause the sexual organ of Arialle Dempsey to contact the mouth of the Defendant, and at the time of the offense Arialle Dempsey was a child younger than 14 years of age,

### COUNT NO. 3

And the GRAND JURY further presents in and to said Court that on or about **June 15, 2004** in Montgomery County, Texas, **Alpha James Badeaux**, hereinafter styled Defendant, did then and there intentionally and knowingly enter a habitation, without the effective consent of Arialle Dempsey, the owner, and attempted to commit and committed assault upon Arialle Dempsey,

(24)

**IMAGED**

Date: 2-10-05

Exhibit No. B

TRN#: 910122400X
DA#: 043956.1
Jury Verdict-Jury Punishment-Penitentiary and Fine

RECEIVED AND FILED
FOR RECORD
At_____O'clock_____M.

OCT 2 6 2005

BARBARA GLADDEN ADAMICK
District Clerk
MONTGOMERY COUNTY, TEXAS
By_____Deputy

CAUSE NO. 05-02-01288-CR
COUNT I

| THE STATE OF TEXAS | § | IN THE DISTRICT COURT OF |
| V. | § | MONTGOMERY COUNTY, TEXAS |
| Alpha James Badeaux | § | 359TH JUDICIAL DISTRICT |

## JUDGMENT AND ORDER

Judge Presiding: Kathleen A. Hamilton

Attorney for State: Robert Bartlett          Attorney for Defendant: Brent Dornburg

Offense convicted of: INDECENCY W/CHILD SEXUAL CONTACT

Degree: Fel. 2°                    Date Offense Committed: June 15, 2004

Charging Instrument: Indictment                    Plea: Not Guilty

Jury Verdict: Guilty

Plea to Enhancement                Findings on
Paragraph(s): N/A                  Enhancement(s): N/A

Finding on Use of Deadly Weapon: N/A

Punishment Assessed by: Jury

Time Credited: 260 days                    Costs: $ 533.00

Punishment and Place of Confinement: fifteen (15) years confinement in the Texas Department of Criminal Justice, Institutional Division; $0.00 Fine

Date Sentence Imposed:  October 13, 2005

Date to Commence:  October 13, 2005

Total Amount of Restitution/Reparation: $0.00

Restitution to be Paid to:  Name: N/A

Concurrent unless otherwise specified.

On October 10, 2005 , the Court called this case for trial:

> This cause being called for trial, the State appeared by the named Assistant District Attorney, and the Defendant, Alpha James Badeaux, appeared in person and by Counsel, and both parties announced ready for trial. The Defendant was arraigned and, in open court, pleaded not guilty to the charge in the Indictment. Thereupon, a jury composed of 12 persons was duly selected, impaneled, and sworn. The jury, having heard the Indictment read and the Defendant's plea of not guilty thereto,

(25)

Minute
Date: 11/04/05

CAUSE NO. 05-02-01288I
STATE OF TEXAS V. Alpha James Badeaux

and having heard the evidence submitted, and having been duly charged by the Court, and having heard the arguments of counsel, retired in charge of the proper officer to consider their verdict as to the guilt or innocence of the Defendant.

On October 13, 2005 , the jury returned their verdict:

The jury was brought into open court by the proper officer, the Defendant and Defendant's counsel being present, and in due form of law returned the following verdict, which was received by the Court, and is here now entered upon the minutes of the Court:

"We, the Jury, find the defendant, Alpha James Badeaux, Guilty of the offense of INDECENCY W/CHILD SEXUAL CONTACT, as charged in the Indictment."

/s/ Matthew Raney
Foreperson of the Jury

Thereupon, the Defendant having requested in writing at the time he entered his plea of not guilty in open court that the jury assess the punishment, the jury, in accordance with the law, was called back into the box and having heard the evidence submitted relative to the question of punishment, and having been duly charged by the Court, and having heard the arguments of counsel, retired in charge of the proper officer to consider the question of punishment.

On October 13, 2005 , the jury assessed punishment:

The jury was brought into open court by the proper officer, the Defendant and Defendant's counsel being present, and in due form of law returned the following verdict, which was received by the Court, and is here now entered upon the minutes of the Court:

"We, the Jury, having found the defendant, Alpha James Badeaux, Guilty of the offense of INDECENCY W/CHILD SEXUAL CONTACT, as charged in the Indictment, assess his punishment at confinement in the Institutional Division of the Texas Department of Criminal Justice for fifteen (15) years and, in our discretion, a fine of $0.00 ."

/s/ Matthew Raney
Foreperson of the Jury

It is therefore CONSIDERED, ORDERED AND ADJUDGED by the Court that the Defendant is guilty of the offense of INDECENCY W/CHILD SEXUAL CONTACT and that said Defendant committed said offense in Montgomery County, Texas on June 15, 2004, as charged in the Indictment, and that his punishment is assessed at confinement in the Institutional Division, Texas Department of Criminal Justice, for the period indicated above, along with any fine stated above, plus Court Appointed Attorney fees in

-2-

(26)

Minute
Date:_____

CAUSE NO. 05-02-01288I
STATE OF TEXAS V. <u>Alpha James Badeaux</u>

the amount of $ 8,669.73, and that the State of Texas do have and recover of the said Defendant all costs of the prosecution, said cost being $ 533⁰⁰ , for which let execution issue.

The Defendant was asked by the Court whether he had anything to say why sentence should not be pronounced against him, and he answered nothing in bar thereof. Whereupon the Court proceeded, in the presence of the Defendant, to pronounce sentence against him as follows, to-wit: "It is the Order of the Court that the Defendant, <u>Alpha James Badeaux</u>, who has been adjudged guilty of the stated felony offense, and whose punishment has been assessed at confinement in the Institutional Division, Texas Department of Criminal Justice, for the period indicated above, along with any stated fine, be remanded to custody of the Sheriff of Montgomery County, Texas, until such time that the Sheriff can deliver said Defendant to the Director of the Institutional Division of the State of Texas, or other person legally authorized to receive convicts, to serve his sentence, in accordance with the provisions of the law governing the Institutional Division, Texas Department of Criminal Justice."

SIGNED AND ENTERED this the _26__ day of _____, 2005.


_____
Judge Presiding

District Clerk of
Montgomery County, Texas                          RIGHT THUMB PRINT

By:_____, Deputy


VOLUME _____ PAGE _____

I, Barbara Gladden Adamick, do hereby Certify _3_ pages in Cause # OS.O2.O1288 as being a true and correct copy of the Original Record now on file in the District Clerk's Office of Montgomery County, Texas.

Witness My Official Seal of Office in Conroe, Texas On This The 18 Day of July 2006

By:_____, Deputy

**Minute**
Date:_____

- 3 -

(27)

TRN#: 910122400X
DA#: 05317.1
<u>Jury Verdict-Jury Punishment-Penitentiary and Fine</u>

RECEIVED AND FILED
FOR RECORD

At_____O'clock_____M.

OCT 2 6 2005

BARBARA GLADDEN ADAMICK
District Clerk
MONTGOMERY COUNTY, TEXAS
By_____Deputy

CAUSE NO. <u>05-02-01288-CR</u>
<u>COUNT II</u>

THE STATE OF TEXAS
V.
<u>Alpha James Badeaux</u>

§
§
§
§

IN THE DISTRICT COURT OF
MONTGOMERY COUNTY, TEXAS
359TH JUDICIAL DISTRICT

<u>JUDGMENT AND ORDER</u>

Judge Presiding: Kathleen A. Hamilton

Attorney for State: Robert Bartlett · Attorney for Defendant: Brent Dornburg

Offense convicted of: AGG SEXUAL ASSAULT CHILD

Degree: Fel. 1°                                    Date Offense Committed: June 15, 2004

Charging Instrument: Indictment                          Plea: Not Guilty

Jury Verdict: Guilty

Plea to Enhancement                     Findings on
Paragraph(s): N/A                       Enhancement(s): N/A

Finding on Use of Deadly Weapon: N/A

Punishment Assessed by: Jury

Time Credited: 260 days                 Costs: $ *See Count I*

Punishment and Place of Confinement: fifty (50) years confinement in the Texas Department of Criminal Justice, Institutional Division; $0.00 Fine

Date Sentence Imposed: October 13, 2005

Date to Commence: October 13, 2005

Total Amount of Restitution/Reparation: $0.00

Restitution to be Paid to: Name: <u>N/A</u>

Concurrent unless otherwise specified.

On <u>October 10</u>, <u>2005</u>, the Court called this case for trial:

This cause being called for trial, the State appeared by the named Assistant District Attorney, and the Defendant, Alpha James Badeaux, appeared in person and by Counsel, and both parties announced ready for trial. The Defendant was arraigned and, in open court, pleaded not guilty to the charge in the Indictment. Thereupon, a jury composed of 12 persons was duly selected, impaneled, and sworn. The jury, having heard the Indictment read and the Defendant's plea of not guilty thereto,

(28)

**Minute**
Date: 11/04/05

CAUSE NO. 05-02-01288II
STATE OF TEXAS V. Alpha James Badeaux

and having heard the evidence submitted, and having been duly charged by the Court, and having heard the arguments of counsel, retired in charge of the proper officer to consider their verdict as to the guilt or innocence of the Defendant.

On October 13, 2005 , the jury returned their verdict:

The jury was brought into open court by the proper officer, the Defendant and Defendant's counsel being present, and in due form of law returned the following verdict, which was received by the Court, and is here now entered upon the minutes of the Court:

"We, the Jury, find the defendant, Alpha James Badeaux, Guilty of the offense of AGG SEXUAL ASSAULT CHILD, as charged in the Indictment."

/s/ Matthew Raney
Foreperson of the Jury

Thereupon, the Defendant having requested in writing at the time he entered his plea of not guilty in open court that the jury assess the punishment, the jury, in accordance with the law, was called back into the box and having heard the evidence submitted relative to the question of punishment, and having been duly charged by the Court, and having heard the arguments of counsel, retired in charge of the proper officer to consider the question of punishment.

On October 13, 2005 , the jury assessed punishment:

The jury was brought into open court by the proper officer, the Defendant and Defendant's counsel being present, and in due form of law returned the following verdict, which was received by the Court, and is here now entered upon the minutes of the Court:

"We, the Jury, having found the defendant, Alpha James Badeaux, Guilty of the offense of AGG SEXUAL ASSAULT CHILD, as charged in the Indictment, assess his punishment at confinement in the Institutional Division of the Texas Department of Criminal Justice for fifty (50) years and, in our discretion, a fine of $0.00."

/s/ Matthew Raney
Foreperson of the Jury

It is therefore CONSIDERED, ORDERED AND ADJUDGED by the Court that the Defendant is guilty of the offense of AGG SEXUAL ASSAULT CHILD and that said Defendant committed said offense in Montgomery County, Texas on June 15, 2004, as charged in the Indictment, and that his punishment is assessed at confinement in the Institutional Division, Texas Department of Criminal Justice, for the period indicated above, along with any fine stated above, plus Court Appointed Attorney fees in the amount of $___, and that the State of Texas do have and recover of the said

- 2 -

(29)

Minute

Date:_____

CAUSE NO. 05-02-01288II
STATE OF TEXAS V. Alpha James Badeaux

Defendant all costs of the prosecution, said cost being $ _See Count I_, for which let execution issue.

The Defendant was asked by the Court whether he had anything to say why sentence should not be pronounced against him, and he answered nothing in bar thereof. Whereupon the Court proceeded, in the presence of the Defendant, to pronounce sentence against him as follows, to-wit: "It is the Order of the Court that the Defendant, Alpha James Badeaux, who has been adjudged guilty of the stated felony offense, and whose punishment has been assessed at confinement in the Institutional Division, Texas Department of Criminal Justice, for the period indicated above, along with any stated fine, be remanded to custody of the Sheriff of Montgomery County, Texas, until such time that the Sheriff can deliver said Defendant to the Director of the Institutional Division of the State of Texas, or other person legally authorized to receive convicts, to serve his sentence, in accordance with the provisions of the law governing the Institutional Division, Texas Department of Criminal Justice."

SIGNED AND ENTERED this the ___26___ day of ___April___, __2005__.

_____
Judge Presiding

District Clerk of
Montgomery County, Texas

By: _____, Deputy

RIGHT THUMB PRINT

VOLUME _____ PAGE _____

- 3 -
(30)

Minute
Date:_____

TRN#: 910122400X
DA#: 05318.1
Jury Verdict-Jury Punishment-Penitentiary and Fine

RECEIVED AND FILED
FOR RECORD
At_____O'clock_____M.
OCT 2 6 2005
BARBARA GLADDEN ADAMICK
District Clerk
MONTGOMERY COUNTY, TEXAS
By_____Deputy

CAUSE NO. 05-02-01288-CR
COUNT III

THE STATE OF TEXAS                §
V.                                §
Alpha James Badeaux               §

IN THE DISTRICT COURT OF
MONTGOMERY COUNTY, TEXAS
359TH JUDICIAL DISTRICT

## JUDGMENT AND ORDER

Judge Presiding: Kathleen A. Hamilton

Attorney for State: Robert Bartlett     Attorney for Defendant: Brent Dornburg

Offense convicted of: BURGLARY OF HABITATION

Degree: Fel. 2°                    Date Offense Committed: June 15, 2004

Charging Instrument: Indictment              Plea: Not Guilty

Jury Verdict: Guilty

Plea to Enhancement            Findings on
Paragraph(s): N/A              Enhancement(s): N/A

Finding on Use of Deadly Weapon: N/A

Punishment Assessed by: Jury

Time Credited: 260 days          Costs: $ see Count I

Punishment and Place of Confinement: fifteen (15) years confinement in the Texas Department of Criminal Justice, Institutional Division; $0.00 Fine

Date Sentence Imposed: October 13, 2005

Date to Commence: October 13, 2005

Total Amount of Restitution/Reparation: $0.00

Restitution to be Paid to: Name: N/A

Concurrent unless otherwise specified.

On October 10, 2005 , the Court called this case for trial:

This cause being called for trial, the State appeared by the named Assistant District Attorney, and the Defendant, Alpha James Badeaux, appeared in person and by Counsel, and both parties announced ready for trial. The Defendant was arraigned and, in open court, pleaded not guilty to the charge in the Indictment. Thereupon, a jury composed of 12 persons was duly selected, impaneled, and sworn. The jury, having heard the Indictment read and the Defendant's plea of not guilty thereto,

(31)

**Minute**
Date: 11/04/05

CAUSE NO. 05-02-01288III
STATE OF TEXAS V. Alpha James Badeaux

and having heard the evidence submitted, and having been duly charged by the Court, and having heard the arguments of counsel, retired in charge of the proper officer to consider their verdict as to the guilt or innocence of the Defendant.

On October 13, 2005, the jury returned their verdict:

The jury was brought into open court by the proper officer, the Defendant and Defendant's counsel being present, and in due form of law returned the following verdict, which was received by the Court, and is here now entered upon the minutes of the Court:

"We, the Jury, find the defendant, Alpha James Badeaux, Guilty of the offense of BURGLARY OF HABITATION, as charged in the Indictment."

/s/ Matthew Raney
Foreperson of the Jury

Thereupon, the Defendant having requested in writing at the time he entered his plea of not guilty in open court that the jury assess the punishment, the jury, in accordance with the law, was called back into the box and having heard the evidence submitted relative to the question of punishment, and having been duly charged by the Court, and having heard the arguments of counsel, retired in charge of the proper officer to consider the question of punishment.

On October 13, 2005, the jury assessed punishment:

The jury was brought into open court by the proper officer, the Defendant and Defendant's counsel being present, and in due form of law returned the following verdict, which was received by the Court, and is here now entered upon the minutes of the Court:

"We, the Jury, having found the defendant, Alpha James Badeaux, Guilty of the offense of BURGLARY OF HABITATION, as charged in the Indictment, assess his punishment at confinement in the Institutional Division of the Texas Department of Criminal Justice for fifteen (15) years and, in our discretion, a fine of $0.00."

/s/ Matthew Raney
Foreperson of the Jury

It is therefore CONSIDERED, ORDERED AND ADJUDGED by the Court that the Defendant is guilty of the offense of BURGLARY OF HABITATION and that said Defendant committed said offense in Montgomery County, Texas on June 15, 2004, as charged in the Indictment, and that his punishment is assessed at confinement in the Institutional Division, Texas Department of Criminal Justice, for the period indicated above, along with any fine stated above, plus Court Appointed Attorney fees in the amount of $ ___, and that the State of Texas do have and recover of the said

- 2 -

(32)

Minute

Date:_____

CAUSE NO. 05-02-01288III
STATE OF TEXAS V. Alpha James Badeaux

Defendant all costs of the prosecution, said cost being $ _XC Cout I_ , for which let execution issue.

The Defendant was asked by the Court whether he had anything to say why sentence should not be pronounced against him, and he answered nothing in bar thereof. Whereupon the Court proceeded, in the presence of the Defendant, to pronounce sentence against him as follows, to-wit: "It is the Order of the Court that the Defendant, Alpha James Badeaux, who has been adjudged guilty of the stated felony offense, and whose punishment has been assessed at confinement in the Institutional Division, Texas Department of Criminal Justice, for the period indicated above, along with any stated fine, be remanded to custody of the Sheriff of Montgomery County, Texas, until such time that the Sheriff can deliver said Defendant to the Director of the Institutional Division of the State of Texas, or other person legally authorized to receive convicts, to serve his sentence, in accordance with the provisions of the law governing the Institutional Division, Texas Department of Criminal Justice."

SIGNED AND ENTERED this the ___2Gu___ day of ___Oubhu___, 2005.

_____
Judge Presiding

District Clerk of
Montgomery County, Texas

By:_____, Deputy

RIGHT THUMB PRINT

VOLUME _____ PAGE _____



- 3 -

(33)

Minute

Date:_____

EXHIBIT "A"

Arialle's father Mr. Dempsey commits perjury when he states in his Affidavit that Badeaux came through a 2 foot by 2 foot hole in his daughter's bedroom wall and molested her when she was in her own bed.

See (RR 3-44) in Vol 3 of 6 of the Reporter's Record Line 13. Q. Did you take measurement's of the hole 14. on the Dempsey's side? Line 19. A. approximately four inches by four inches



Arialle's side of wall

coaxal cable plate hole 4" x 4"

(34)

# TIME LINE OF EVENTS
## AT
## Woodlands Meadows Apartments

### JUNE 2004

| SUN | MON | TUE | WED | THR | FRI | SAT |
|-----|-----|-----|-----|-----|-----|-----|
|     |     | 1   | 2   | 3   | 4   | 5   |
| 6   | 7   | 8   | 9   | 10  | 11  | 12  |
| 13  | 14  | 15  | 16  | 17  | 18  | 19  |
| 20  | 21  | 22  | 23  | 24  | 25  | 26  |
| 27  | 28  | 29  | 30  |     |     |     |

☐2☐ First time Arialle plays at Katelyn's (RR2-153)

☐4☐ Arialle alleges improper touching Tickle Game (RR3-90)

Arialle's Birthday

 Alleged Make Up Mess incident (RR3-93)

⊠ Interval Arialle does not play at Katelyn's (RR4-53)

 Arialle comes back to play at Katelyn's apt. after long time interval (RR4-53)

☐13☐ Katelyn plays at Arialle's apt. and is picked up by father who informs Lisa that Katelyn will be leaving Texas the next day (RR2-160)

☐14☐ Katelyn leaves Texas that morning. Arialle testifies that this day is the last time and incident Badeaux ever attempts to unfasten her pants or touching her or licking her on those private parts (RR3-109). Lisa also says that Arialle told her that after this day there was never anything else with her without her pants on. (RR3-129).

☐15☐ X-wife comes for visit - see Exhibit "14"

(35)

and the victim's bedroom wall, so you are looking down in that wall space. The standard pink installation you probably all have in your houses, that's also standardly in apartment walls. A section of that was pushed down into that wall. Upon removing that installation, the silver key was located in the bottom of that wall space. And what you are looking at is that being illuminated with a flashlight and then us using photography to make it clear.

Q. And the silver key was actually in the wall space between the two walls?

A. That's correct. Down on the bottom of that wall space.

Q. Did you collect the key?

A. The key was collected.

Q. Was the key fingerprinted?

A. No, it was not.

Q. Why was that, sir?

A. The key — that type of key in particular is not a suitable candidate at all for fingerprint examination, due to the surface of the key.

Q. I show you what's marked as State's Exhibit No. 13. Can you tell us what that shows?

A. Okay. That's close-up of the key that was in the bottom of the wall space. Also, an envelope and some purple curly-type ribbon and all of that was found at the same time in

25

the bottom of that wall space.

Q. Can you tell us, was anything in the envelope?

A. I don't believe that there was anything in that envelope.

Q. Okay. What about the curly-type ribbon? Do you know what that looked like? Do you have any indication of what it was?

A. Just curly-type ribbon, something you get at a craft store.

Q. Did it appear to have been placed there or do you know?

A. You know, it got there somehow or another. That's about all I can say about how it got in the wall.

Q. I show you what's been marked as 13 A, and I'm taking it a little bit out of order. We'll come back to that. Let me finish with that.

At some point, you take out the plug. Right?

A. That's correct.

Q. I show you what's been marked as State's Exhibit No. 14. What does that show?

A. Okay. Again, we're back in the wall space. What you are looking at is the trap door type device which has been loosened and removed from the wall. You can see that the shoestring that was attached to the back of it is now lowering

26

that device down to the floor in the victim's bedroom. The shoestring has been loosened from the screw that holds it tight when the trap door is in place.

Q. How — as far as the actual removal of that plug, as we've been calling it, can you tell us, did that require some force on your part, some cutting, or was it something that freely —

A. It did. Some of this foaming sealer had made its way under the back of that plug, which had affixed it relatively tight so we did have to push it to get it out of the wall.

Q. Now, as far as the foaming sealer, did it appear to have been something that was recently done, a long time in the past done or do you know?

A. There is no way to conclusively tell because it does set up pretty quickly, so I can't give you an exact time frame, not knowing the properties of that sealant and how it works.

Q. Did you take measurements of the wall in that — the hole in the wall on that side, sir?

A. Yes, sir, I did.

Q. I show you what's been marked as State's Exhibit 15. Can you tell us, was that one of the measurements that was — does that show you taking one of the measurements?

A. Yes, it does.

27

Q. And can you tell us the approximate distance from the side, from side to side?

A. Let me consult my notes.

Q. Sure.

A. Yeah. The hole itself was 13 by 13 inches approximately, located between the wall studs. And it was about 22 inches from the floor and 33 inches from the south wall of the bedroom.

Q. And were you — did you measure any other objects to compare that hole with?

A. Well, we did also measure the hole that was created from removing the trap door as well.

Q. Maybe I'll make myself more clear in the next photograph. I show you what's been marked as State's Exhibit 16. And we're going to take it slow, for right now, as far as offering these. Do you recognize that photograph?

A. Yes, I do.

Q. Okay. And is it a fair and accurate depiction of what you observed?

A. Yes.

MR. BARTLETT: Upon tendering to opposing counsel, I'll offer same into evidence.

MR. DORNBURG: No objections.

THE COURT: 16 admitted.

Q. (BY MR. BARTLETT) What was your purpose in

28

**Page 41**

you've gone through apartments before?

A. A few.

Q. And can you tell us, is there a pretty standard height for these type of plates?

A. Absolutely. Unless there is something you are doing in particular, you know, those plates are pretty standard throughout the apartment.

Q. What is it approximately from the floor?

A. I think it's right at 18 inches or so from the floor.

Q. Okay. State's Exhibit No. 25, what does that depict, sir?

A. What you are looking at here is the wall plate that we've been discussing removed from this cut section of Sheetrock that it was attached to, showing that the wall plate is not necessarily attached to the wall. Instead, it's attached to this plug, for lack of a better term, or trap door.

Q. State's Exhibit No. 26, what does that depict, sir?

A. Okay. Again, this is the same thing. A little bit different angle, showing this plate pulled down away from the hole. And then this is the cut section of Sheetrock concealing the hole.

Q. What is the brown portion of the photograph? What does that -- what was that?

**Page 42**

A. This brown portion here is some type of backer board, which is different in composition from the other Sheetrock. It appears to be something that -- intentionally put there to hold this plate.

Q. Now, I show you what's been marked as State's 28. Did you perform several experiments as far as the plug?

A. Yes, we did.

Q. And can you tell the ladies and gentlemen of the jury what those experiments were?

A. One, to, you know, demonstrate the device, how does it work. What are the purposes of the shoestring? Can you get an arm or an object through that hole. And that is what this indicates here. The bed has been removed away from the wall. Again, we're back in Arrialle's bedroom and this shows the shoestring lowering this trap door-type device to the floor, giving access into the other apartment.

Q. Okay. And tell us the importance of the shoestring. Why would a shoestring need to be attached to it?

A. Based upon the way this works, in order to retrieve that trap door, that plug, he could not reach the floor by hand to do that. So the shoestring, in our estimation, is used to pull that plug back up so it can be affixed back in place in the wall.

Q. A little bit out of order here. Start with 30.

**Page 43**

Q. What does 30 depict?

A. I don't know how clear that is, but what you are seeing there is another investigator is taking that photograph. I'm standing in the defendant's bedroom, looking into the -- or Arrialle's bedroom through the hole in the wall.

Q. If you look closely in the photograph, can you see your face in the hole?

A. Yes, sir.

Q. How much can you see, sir?

A. A pretty good portion, at least from the top of the head to the bottom of the nose.

Q. As far as when you looked through that hole, can you tell us what you observed?

A. You could clearly see the top of Arrialle's bed and then, obviously, into the rest of the room -- in the rest of the room, it provided you a pretty good field of vision.

Q. Now, I show you what's been marked as State's Exhibit No. 29. Is the bed back in place in this one?

A. Yes, sir. It is.

Q. Can you tell us what you were doing in this photograph?

A. CSI Wright took this photograph demonstrating that, you know, an average male could reach their arm through that hole and touch the top of the victim's or Arrialle's bed.

**Page 44**

Q. When you conducted this experiment and observed this, how far was he -- I mean the other CSI investigator able to reach his arm through?

A. How far was the other --

Q. Was he able to get pretty much all of his arm through?

A. I don't know that he had put his arm through the hole. He's photographing me putting my arm through the hole.

Q. I'm sorry. I got it reversed. How far were you able to extend your arm through the hole, sir?

A. Up to midbicep pretty easily. That allowed me to reach my hand across to about the center of that bed.

Q. Thank you. Did you take measurements of the hole on the Dempsey side?

A. Yes, sir. We did.

Q. And I show you what is marked as State's Exhibit No. 32. What does that indicate?

A. That indicates one side of the hole. The hole was approximately four inches by four inches.

Q. And State's Exhibit No. 33, what does that indicate?

A. That's the far side of the hole. Giving you both measurements, both angles of the hole.

Q. Did you go to the rest of the apartment and locate and photograph other parts of the apartment?

**Page 93**

remember what I'm about to talk about, when you went over to Kaitlin's?

A. Yes.

Q. Who was at Kaitlin's apartment that day?

A. Kaitlin, Addi, Dravin and me.

Q. So Kaitlin, Addi, and you and another person named Dravin. And who is Dravin?

A. Addi's little brother.

Q. How old is Addi's little brother?

A. Four.

Q. Okay. Now, did you -- why -- tell us what happened the first time you went over and he asked to be alone with you, Mr. Badeaux asked to be alone with you, Badeaux. Tell us what happened?

A. He told Addi and Kaitlin to go clean whatever room they messed up.

Q. Okay. To go clean whatever room they messed up. Okay. So you had gone -- somebody had messed up the room and -- so you all make a mess of a room and you did what? And then who told you to go clean it up?

A. A.J.

Q. And then what happened?

A. He said he needed to talk to me.

Q. Okay. Then what happened? Tell us what happened next.

**Page 94**

A. He took me in Sarah's room.

Q. He took you where?

A. In Sarah's room.

Q. And Sarah is who?

A. Kaitlin's mom.

Q. Did he ask -- did he explain to you why he wanted you to go in Sarah's room?

A. Yes.

Q. And what was the reason he gave you?

A. He needed to talk to me.

Q. He needed to talk to you. Right?

A. Yes.

Q. Okay. I still need you to talk louder. Okay. You are doing fine, you just got to talk louder. And then when -- he needed to talk to you. When you went in the room, what happened?

A. He said -- he -- I ended up on the bed.

Q. You ended up on the bed. Was the door open or closed?

A. Closed.

Q. And how did it get closed?

A. He closed it.

Q. Okay. And what happened then?

A. He locked it.

Q. Okay. He locked the door. What about the blinds?

**Page 95**

Were there windows to this apartment, to this room? Was there a window?

A. Yes.

Q. And were there blinds on the window?

A. Yes.

Q. Were they opened or closed?

A. Closed.

Q. Could you see in the room, even though that the door was closed and the blinds were closed?

A. Yes.

Q. Okay. Tell us what happens when you end up on the bed? Are you lying -- are you lying down or sitting up on the bed?

A. I was laying down.

Q. Are you face up or face down?

A. Face up.

Q. Okay. And tell us what happens next?

A. He said he was going to play tickle game, but it would feel better with my clothes off.

Q. Then what do you start thinking about?

A. If we're going to play the tickle game, why isn't Addi and Kaitlin here.

Q. Okay. And then what happened -- and you started to play the tickle game, he wanted to play the tickle game and you said, you thought to yourself what?

**Page 96**

A. If we're going to play the tickle game, why isn't Addi and Kaitlin here.

Q. Just let's turn towards her so she can hear and then she can type it. That will work better. We're going to get there.

Now, what does he start to do then? What does Mr. Badeaux start to do?

A. He starts to unbuckle my pants.

Q. Unbuckle your pants?

A. Yes.

Q. Did he have a buckle or was it a button or a snap?

A. It was a snap.

Q. Okay. So he starts to undo the snap. What else does he do?

A. He unzips the zipper.

Q. And then what else, if anything?

A. He starts to pull it down.

Q. Tries to pull your pants down. And then what do you do at that time?

A. I kick him in the chest.

Q. Okay. You kick him with one foot or two feet?

A. Two feet.

Q. What does Mr. Badeaux do when you kick him?

A. He falls back.